UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JIANQING WU,

    Plaintiff,

        v.                                    Civil Action No. 14-376 (JEB)

SPECIAL COUNSEL, INC., *et al.*,

    Defendants.

**MEMORANDUM OPINION**

*Pro se* Plaintiff Jianqing Wu, a native Mandarin speaker, is an educated man, having earned three separate graduate degrees over the years, including a J.D. and a Ph.D. Perhaps, he alleges, too educated, as he contends that Defendants ALTA, Hire Counsel, Special Counsel, Morrison & Foerster, and Wilkie Farr & Gallagher all denied him employment as a contract attorney on the basis of his age – because his experience would have made him too expensive – and because of his race and national origin – because they preferred people whose language skills were not as good as his. These acts, he alleges, violated the Age Discrimination in Employment Act, Title VII of the 1964 Civil Rights Act, and various state laws. All five Defendants now separately move to dismiss Wu's claims on a variety of grounds. Concluding that Plaintiff has failed to state a plausible claim that Defendants discriminated against him or that their policies had a disparate impact on a protected class of which he is a member, the Court will grant those Motions as to all federal claims. Plaintiff may pursue his remaining state-law claims in the appropriate forum should he so choose.

1

**I.     Background**

The Court views the facts pled in the Amended Complaint as true, as it must at this stage of the proceedings. Plaintiff, a graduate of four degree programs and a member of the New York, D.C., and patent bars, "is . . . devoted to document review as a real career." Am. Compl., ¶ 19. In July 2009, Wu, a native Mandarin speaker, applied for a job assisting with a Mandarin review project for Defendant law firm Wilkie Farr & Gallagher LLP through Defendant staffing agency Alijon (now known as Special Counsel). See Am. Compl., ¶¶ 21, 26. As part of his application, he was required to take Defendant ALTA's "Advanced Chinese Reading Test." Id., ¶ 22. Forced to rush through the test because there were no "instructions on the test duration, total question number, test scope, or anything," id., Wu earned a score of 75 percent. Unfortunately, as he understood it, the "passing point" for employment with Wilkie Farr was 90 percent. Id., ¶ 23. As a result, Plaintiff was not hired. See id.

Undeterred, Wu applied for another Mandarin project through another staffing agency, Defendant Hire Counsel, in October 2009, this time with Defendant law firm Morrison & Foerster, and he took another ALTA Mandarin exam. See id., ¶ 40. Yet again, he was not hired. Still he kept on, seeking similar employment no fewer than six more times. See id., ¶ 47. Although he was asked to take the same exam on each of those six occasions, he refused to sit for any, and after "careful review" of hiring-agency testing practices, he concluded that he had been "blacklisted" by Defendants because his test score was not high enough, because he refused to take further tests, because of animus Defendants felt toward him as a person of Chinese descent, see id., ¶¶ 47-49, or as part of a "pay-rate fixing" conspiracy aimed at "select[ing] as many new, inexperienced, less qualified, and mismatched candidates" as possible in order to keep pay low and help Defendants' "bottom line." See id., ¶ 54.

Unhappy with his inability to gain employment as a document reviewer, Plaintiff filed a charge of discrimination with the EEOC on June 12, 2013, alleging violations of Title VII and the Age Discrimination in Employment Act. See Hire Counsel MTD, Exh. A (EEOC Form) at 2. Although it did not make a determination on the merits of that complaint, the EEOC issued Wu a Notice of Right to Sue on December 12, 2013. See Compl., Exh. 1 (Notice of Right to Sue) at 1. Plaintiff did not turn down that invitation, filing a Complaint with this Court on March 10, 2014. See ECF No. 1. Although his Amended Complaint weighs in at a prolix 45 pages and includes lengthy digressions on rate fixing and economic analysis, Wu does clearly include federal claims for discrimination on the basis of national origin and age against all Defendants, race discrimination against Special Counsel and Hire Counsel only, and state negligence and breach-of-contract claims against ALTA only.

All five of those Defendants subsequently moved to dismiss, citing various and alternative grounds. In now turning to those Motions, the Court need only analyze the arguments regarding Plaintiff's failure to state a claim to resolve this case.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendants' Motions to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The notice-pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005),

3

and he must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). Although a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

In evaluating the sufficiency of Plaintiff's Complaint under Rule 12(b)(6), the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). It may not, however, consider documents presented for the first time as an attachment to a motion to dismiss or an opposition. Plaintiff offers just such a set of documents – styled "Declarations" – along with his Opposition to each Defendant's Motion to Dismiss. As these documents are unsworn and improper at this stage, the Court will pay them no mind.

One other point deserves mention here. The Court is well aware that *pro se* parties

4

deserve a significant amount of leeway in their pleadings. See, e.g., Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999) ("Courts must construe *pro se* filings liberally."); Voinche v. FBI, 412 F. Supp. 2d 60, 70 (D.D.C. 2006) ("This Court gives *pro se* parties the benefit of the doubt and may ignore some technical shortcomings of their filings"). Because Plaintiff is a lawyer with several degrees and many years' experience, however, no special treatment is due. See Richards v. Duke Univ., 480 F. Supp. 2d 222, 235 (D.D.C. 2007) ("[B]ecause plaintiff is an attorney, and a knowledgeable one at that, this Court will not give her all the benefits of the liberal standards that are afforded to *pro se* litigants and plaintiff's *pro se* status will not weigh in favor of denying the defendants' motions to dismiss."); Ruffin v. Fenty, No. 09-1237, 2010 WL 8754288, at *2 n.7 (D.D.C. Sept. 13, 2010) ("[I]n the normal course of his law practice, any complaint filed by the plaintiff would not be entitled to the application of a 'less stringent standard' to survive a motion to dismiss, and thus it hardly makes sense that the plaintiff should be given such leeway by the Court simply because he is representing himself."). The Court, accordingly, will treat his pleadings as it would any other lawyer's.

**III.    Analysis**

Plaintiff charges that each Defendant engaged in multiple forms of discrimination. ALTA, Morrison & Foerster, and Wilkie Farr, he alleges, discriminated against him on the basis of his national origin and his age, and Hire Counsel and Special Counsel because of his race, national origin, and age. He contends, moreover, that all Defendants were complicit in a hiring scheme that had a disparate impact on older Chinese people and native Mandarin speakers. The Court will address the intentional-discrimination and disparate-impact claims in turn. Determining that none survives, the Court will conclude by considering its jurisdiction over the remaining state-law causes of action.

A.      Intentional Discrimination

Title VII makes it "unlawful . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA adds age discrimination to the mix. See 29 U.S.C. § 623. To make out a case for discrimination at the motion-to-dismiss stage, Plaintiff need only allege that he (1) suffered an adverse employment action (2) because of his race, color, religion, sex, national origin, age, or disability. See Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008). In other words, he must present facts that "give[] rise to an inference of discrimination." Czekalski v. Peters, 475 F.3d 360, 364 (D.C. Cir. 2007) (quoting Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002)).

Plaintiff alleges that Defendants intentionally discriminated against him on account of three characteristics: his race, his nationality, and his age. The Court can dispense with the race claim quickly, as the argument has an obvious shortcoming: Plaintiff provides no facts that could possibly give rise to an inference that any failure to hire him was due to intentional racial discrimination. In his entire 45-page Complaint, in fact, Plaintiff mentions race exactly twice, once on the first page in a general description of the wrongs he suffered and once on the fortieth page in a recap of the charges. None of the facts pled, moreover, relate to his race – as opposed to the language he speaks or the country from which he hails. A plaintiff's country of origin and language are not the same thing as his race. Ndondji v. InterPark Inc., 768 F. Supp. 2d 263, 274 (D.D.C. 2011) ("[G]eneral, conclusory allegations that Plaintiff was a victim of racial discrimination are simply not enough to bring a section 1981 action, particularly when the clear thrust of his allegations is based on national origin discrimination."); Nyunt v. Tomlinson, 543 F. Supp. 2d 25, 35 (D.D.C. 2008) (rejecting plaintiff's argument that his discrimination claims

based on his Burmese origin can be viewed as "like or reasonably related" to race and can be basis for racial discrimination claim). As a result, the Court will dismiss this Count.

Plaintiff's claim of discrimination on the basis of his national origin, although more developed, also comes up short. Wu alleges that the Defendant "[s]taffing agencies and law firm[s'] intention is to use ALTA's test to exclude . . . the <u>best native speakers</u> for the purpose of . . . pay rate fixes and bigger profits [*sic*] margins." Am. Compl., ¶ 107 (emphasis added). In order to perpetrate this rate-fixing scheme, Plaintiff alleges, Defendants sought out "new, inexperienced, less-qualified, and mismatched candidates" – that is, candidates who did not speak Mandarin as well as he did, and especially those with less than "twenty (20) years of grow-up [*sic*] environment and more than 15 years of native education." Am. Compl., ¶¶ 85 n.11, 54. In other words, the preference is for natives who spent less time in China studying Mandarin. The logic here seems to be that if Defendants had hired more-qualified candidates – namely, him – they then could not have hired their preferred, less-experienced reviewers because a "know-everything reviewer and a know-nothing reviewer simply cannot work together on the same matter while they are paid at the same $50 rate." <u>Id.</u> As a result, he argues, he was discriminated against because of his native language, and thus because of his national origin.

Plaintiff's own words sink his case: he was not denied employment because he is a <u>native speaker</u> of Mandarin, but rather because he is <u>more educated</u> in the language than other native speakers. Even if speaking Mandarin were a proxy for national origin – which some courts have found is not the case, see <u>Mumid v. Abraham Lincoln High Sch.</u>, 618 F.3d 789, 795 (8th Cir. 2010) ("While Title VI prohibits discrimination on the basis of national origin, language and national origin are not interchangeable."); <u>Garcia v. Gloor</u>, 618 F.2d 264, 268 (5th Cir. 1980) ("Neither the statute nor common understanding equates national origin with the language

7

that one chooses to speak.") – Title VII does not segregate people based on years of education or native language study. In the end, Wu does not allege that any Defendant refused to hire him because of his national origin, or even because of the language he speaks, but instead because he is a "know-everything reviewer." "Know-everythings" may not be particularly popular at dinner parties, but they are not a protected class.

Plaintiff, finally, appears to claim intentional discrimination on the basis of his age when he alleges that "[b]y using the ALTA tests to create their common qualification, Defendants intend to exclude old and experienced candidates because the tests failed to factor in valuable experience of old and experienced candidates." Am. Compl., ¶ 112. This claim, however, also comes to nothing. Not only does Wu fail to allege any facts to connect the decision to refuse to factor in an applicant's experience with the purported "inten[t] to exclude old . . . candidates," but the ADEA also "does not require an employer to accord special treatment to employees over forty years of age[, but rather to treat] an employee's age . . . in a neutral fashion." Slenzka v. Landstar Ranger, Inc., 122 F. App'x 809, 813 (6th Cir. 2004) (citing Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982); Williams v. General Motors Corp., 656 F.2d 120, 129 (5th Cir. 1981)). Wu does not allege that Defendants have treated him any differently from other candidates because of his age, but instead that it is unfair that he has been treated the same as younger applicants. That is not actionable discrimination.

B. Disparate Impact

A lack of intentional discrimination does not necessarily doom Plaintiff's case. Perhaps, instead, Wu means to argue that Defendants' testing and hiring policies unfairly – but unintentionally – left out older, more experienced candidates and those from China. In other words, that those policies had a disparate impact. He does seem, for example, to allege disparate

impact on the basis of age and experience in one paragraph of his Complaint, claiming that "Defendants have developed additional means to exclude knowledgeable, skillful, experienced candidates, resulting in disparate impact on old candidates," Am. Compl., ¶ 55, and that "[d]emanding old candidates to take a test and then rating their scores in a same scale is an absolutely sure way to exclude them in a disproportional ratio." Id., ¶ 94. Plaintiff also alleges that Defendants Hire Counsel and Special Counsel use conflict screening, random blacklisting, and anonymous job listings in a way that has a disparate impact on older candidates, see id., ¶ 55, and that ALTA's language test has a disparate impact on native Mandarin speakers. Id., ¶ 85 n.11.

In order to establish disparate-impact discrimination, Plaintiff must show that a facially neutral employment policy or practice has a significant disparate impact on a protected class of which he is a member. See Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998) (citing Griggs v. Duke Power Co., 401 U.S. 424, 430–32 (1971)). At this stage in the litigation, to be sure, he need not prove a *prima facie* case of disparate impact, but "[c]ommon sense and fairness . . . dictate that [he] must, at a minimum, allege some statistical disparity, however elementary, in order for the defense to have any sense of the nature and scope of the allegation." Brady v. Livingood, 360 F. Supp. 2d 94, 100 (D.D.C. 2004). Here, he has not even done that.

1. *Age*

To begin with, much like he did with his national-origin disparate-treatment claim, Plaintiff here actually alleges that Defendants' hiring policies have a disparate impact on people with too much experience, rather than old people. Beginning with Defendants' alleged "policy objective" of "paying the least to contract attorneys," Plaintiff asserts that the companies "can only . . . achieve[]" the objective "by requiring the lowest reviewer's qualifications: new,

9

inexperienced, less-qualified, and mismatched candidates." Am. Compl., ¶ 54. In line with that objective, Defendants select candidates for document review possessing "limited or no language skills with no relevant foreign country living, no relevant case experience, no required technical background, and no relevant legal background," id., ¶ 91, and they employ "blacklists" in order "to exclude knowledgeable, skillful[l], experienced candidates." Id., ¶ 55. This, of course, leaves out Plaintiff, who is "the only person in the world" who has "carefully studied every important factor affective review performance from a system point of view and under the conventional discovery standard," and who "understand[s] more about documents [*sic*] characteristics, human[s'] unique roles, communication, issues, judgment difference, and litigation dynamics than anyone else." Id., ¶ 19. What is more, those hiring policies are "presumably bias[ed] against old candidates because Defendants failed to factor in the valuable experience of old reviewers . . . while favoring young and inexperienced reviewers." Id., ¶ 94.

It is, of course, conceivable that a policy excluding experienced reviewers from employment could have the effect of disproportionately leaving out older candidates. Plaintiff, however, has offered nothing to bring that allegation into the realm of the plausible; instead, he has made a compelling case only that Defendants' policy of excluding experienced candidates had the effect of excluding experienced candidates.

As evidence of purported age discrimination, Plaintiff points to law firms such as Steptoe & Johnson LLP – not a Defendant in this case, it is worth noting – who refuse to hire candidates with more than ten document-review projects under their belts. See Am. Compl., ¶ 54 n.7. He also alleges that some law firms engage in "random blacklisting" – that is, excluding random past applicants from applying for future jobs. Both policies, he claims, disproportionately affect older candidates, as experienced reviewers are allegedly more likely to be old and random

10

blacklisting of applicants is more likely to catch older candidates, who, he presumes, will have applied for more jobs.

That argument, however, does not save Plaintiff's claim. Once again, age and experience in the field are not logical equivalents for the purpose of the ADEA. Indeed, the statute's operative provisions all turn only on chronological age: the law makes it unlawful to discriminate against people over age 40 – not people who have, say, more than 20 years of experience in their job – see 29 U.S.C. § 631(a), and an employee is to be considered "similarly situated to any other individual" for the purpose of comparing them to smoke out discrimination only "if [the employee] is identical to such other individual in every respect (including period of service, compensation, position, date of hire, work history, and any other respect) except for age." 29 U.S.C. § 623(10)(A)(ii). The statute, therefore, clearly contemplates a distinction between "period of service" or "work history" and "age."

Disentangling age from experience in the relevant area strikes the Court as eminently reasonable. The two, after all, are distinct characteristics that need not rise proportionately; a candidate over 40 will not necessarily be the more experienced candidate, and discrimination on the basis of experience may potentially affect any subset of candidates, not just ones over 40. This is especially true when it comes to short-term, often-digital, contract-attorney positions, which may very well attract an uncommonly young applicant pool.

The courts, moreover, have confirmed this important distinction. While the rejection of more-experienced and overqualified candidates may eventually lead to a finding of age discrimination, the ADEA does not prohibit the practice. See E.E.O.C. v. Insurance Co. of North America, 49 F.3d 1418, 1420 (9th Cir. 1995). So if, for example, Plaintiff had alleged that rejecting applicants on the basis of experience was a pretext for actual and intentional age

11

discrimination, he would have a claim under the ADEA.  Similarly, if he had proffered some form of statistical or anecdotal evidence showing that older candidates were being excluded systematically, he could also proceed here.  Neither is the case, however.

Plaintiff, moreover, does not allege that older candidates have actually suffered disproportionately under the challenged employment policies.  Instead, he merely reasons that Defendants' practice of "conflict screening" and "blacklisting" experienced candidates had a discriminatory impact on older candidates because "[t]he probability for any reviewer to be blacklisted is proportional to the number of cases the reviewer has worked."  Am. Compl., ¶ 55.  The speculative correlation between age and experience as a document reviewer, however, is insufficient to state a claim for disparate impact.   (The Court notes, incidentally, that Plaintiff attempts to supplement the facts he alleges in his Complaint with further statistical and logical reasoning in his Oppositions to Defendants' Motions.  The Court, however, may not consider "[f]actual allegations in briefs or memoranda of law . . . when deciding a Rule 12(b)(6) motion." Juergens v. Urban Title Servs., Inc., 246 F.R.D. 4, 10 (D.D.C. 2007) (citing Henthorn v. Dep't of Navy, 29 F.3d 682, 688 (D.C. Cir. 1994)).  As a result, it will disregard the facts that appear for the first time in Plaintiff's briefs.)

Without pointing to some "elementary" evidence that the policy in question had a disparate impact on people over 40, Wu may not equate the rejection of candidates who have completed more than ten document-review projects with a policy that results in the systematic exclusion of older candidates.  Similarly, Plaintiff does not even present anecdotal evidence to support his claim that any older people were excluded by Defendants' "anonymous job announcements" – by which the Court takes him to mean job announcements posted without the hiring agency's name.  As a matter of fact, Plaintiff only provides anecdotal evidence that these

postings did not "avoid the attention" of one older candidate – namely, himself. See Am. Compl., ¶ 34 ("Special Counsel may have published many project announcements in public media without disclosing its true identity, and Plaintiff might have contacted it, but did not receive any reply. It is hard for Plaintiff to know how many times Plaintiff actually made inquiry into its job opportunities due to concealed identities, i.e. blind ads and the like."). Although discrimination claims ought to be liberally construed for the purpose of a motion to dismiss, see Spaeth v. Georgetown Univ., 839 F. Supp. 2d 57, 63 (D.D.C. 2012), in this case the Court cannot create something out of nothing.

      2. *National Origin*

Nor is there much to Plaintiff's claim that native speakers are disadvantaged by the language tests while "uneducated native candidates" – that is, native speakers who "have not received formal education in a native language, but can speak the native language fluently as a result of their growing up in the native environment" – have a distinct advantage and are overrepresented in the e-discovery industry. Am. Compl., ¶ 85 n.11. Even assuming the truth of that observation, as the Court must at this stage, Plaintiff cannot make out a claim for national-origin discrimination, as he has, at best, alleged discrimination on the basis of education or language skills among Chinese natives.

Plaintiff all but admits as much in his Amended Complaint, in which he allows that the applicants who have benefited from the purported discriminatory effects of ALTA's test are of Chinese origin. The distinction between these individuals and Plaintiff, then, is not their national origin, but their level of education. According to Plaintiff,

> Those native speakers who know the most about native culture and assumptions will have more troubles to understand translated articles than those who know less about native culture and native

13

> contextual assumptions. The test model explains why the <u>best</u>
> native speakers cannot pass the test without cracking it.

Am. Compl., ¶ 106 (emphasis added).

Plaintiff's status as an <u>educated</u> native speaker, in sum, cannot be the basis for a cause of action under Title VII, as the statute prohibits discrimination only on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Education and language skills, in contrast, are not protected characteristics, and this Court will decline to "create new protected classes not identified by the legislature." See <u>Estenos v. PAHO/WHO Federal Credit Union</u>, 952 A.2d 878, 887 (D.C. 2008). As other native speakers of the same national origin as Plaintiff are concededly advantaged by the language test, Plaintiff has failed to show that he is part of a Title VII protected class that has suffered a disparate impact. As a result, his national-origin disparate-impact claim will also be dismissed.

### C. <u>Remaining State-Law Claims</u>

The Court, moreover, lacks independent subject-matter jurisdiction over the remaining state-law claims, and it will decline to exercise supplemental jurisdiction. Federal district courts are given supplemental (or "pendent") jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. 28 U.S.C. § 1367(a). By the same token, they "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966), <u>quoted in</u> <u>Shekoyan v. Sibley Int'l</u>, 409 F.3d 414, 423 (D.C. Cir. 2005). When deciding whether to exercise supplemental jurisdiction over state

14

claims, federal courts should consider "judicial economy, convenience, fairness, and comity." Shekoyan, 409 F.3d at 424. When all federal claims are eliminated before trial, however, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (finding the discretion set out in Carnegie-Mellon "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

Here, the factors weigh against retention of the case. The Court is dismissing the only federal claims against Defendants. This case has not progressed in federal court past Defendants' Motions to Dismiss, and the Court has developed no particular familiarity with the issues presented. Cf. Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378 (D.C. Cir. 2010) (finding that district court appropriately retained pendent jurisdiction over state claims where it had "invested time and resources" in the case). The Court can thus conceive of no undue inconvenience or unfairness to the litigants that would result from such a decision. Finally, Plaintiff will not be prejudiced because 28 U.S.C. § 1367(d) provides for a tolling of the statute of limitations during the period the case was here and for at least 30 days thereafter. See Shekoyan, 409 F.3d at 419 (affirming district court finding that because of this tolling, dismissal of pendent state claims "will not adversely impact plaintiff's ability to pursue his District of Columbia claims in the local court system") (citation omitted).

## IV. Conclusion

For the foregoing reasons, the Court will dismiss Plaintiff's federal claims in their entirety. "The standard for dismissing a complaint with prejudice," however, "is high," Belizan

15

v. Hershon, 434 F.3d 579, 583 (D.C. Cir. 2006), and "dismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (citation and internal quotation marks omitted).  As the Court cannot determine with confidence that Plaintiff has no likelihood of curing the deficiency, it will, accordingly, dismiss without prejudice.  Since the Court now lacks federal subject-matter jurisdiction, it will also dismiss Plaintiff's remaining state-law claims without prejudice.  A separate Order consistent with this Opinion will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 16, 2014